```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/5/2018
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

ALESANDI ARIEL ABREU; KENIA MARIA
SANCHEZ DE ABREU; CRISMELDA CEBALLO DE
ABREU; and DANILO ABREU ARIAS,

                       Plaintiffs,

                      -v-

THE CITY OF NEW YORK; Detective ANDREW
ULICH, Tax ID: 933537; Detective DWAYNE LEE
SHUE, Tax ID: 942050; Police Officers JOHN DOE 1
through 4, individually and in their official capacities,

                       Defendants.

------------------------------------------------------------X

17 Civ. 6179 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

      Plaintiffs Alesandi Ariel Abreu, Kenia Maria Sanchez de Abreu, Crismelda Ceballo de Abreu, and Danilo Abreu Arias bring this action under 42 U.S.C. § 1983 against the City of New York (the "City") and New York City Police Department ("NYPD") Detectives Andrew Ulich and Dwayne Lee Shue. Plaintiffs allege primarily that in the early morning hours of August 17, 2014, a group of uniformed NYPD officers unlawfully entered their apartment and searched the premises while restraining plaintiffs at gunpoint.

      Pending now is defendants' motion to dismiss the third amended complaint for failure to state a claim. For the reasons that follow, defendants' motion to dismiss is granted in part and denied in part. Specifically, the Court dismisses plaintiffs' claims against the City, as well as plaintiffs' claims alleging deprivation of due process. Plaintiffs' claims premised on their right to freedom from unreasonable searches and seizures, however, shall proceed to discovery.

I.  **Background**

   A.  **Factual Background**[1]

On August 17, 2014, at approximately 3:30 a.m., as many as six uniformed NYPD officers kicked open the door to plaintiffs' shared apartment at 1315 Lafayette Avenue in the Bronx. TAC ¶ 14. The officers proceeded into Kenia and Danilo's bedroom, rousing them and their son D.A. from sleep. *Id.* ¶ 15. Hearing the commotion, Crismelda and Alesandi, who had been asleep with their daughter A.A., opened their own bedroom door. *Id.* ¶ 16. Police promptly

---

[1] The facts related herein are drawn primarily from plaintiffs' third amended complaint. *See* Dkt. 54 ("TAC"). For the purpose of resolving the motion to dismiss, the Court assumes all well-pled facts to be true, drawing all reasonable inferences in plaintiffs' favor. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

Plaintiffs have also filed five affidavits relating to their efforts to identify the individual defendants: two attached to their brief in opposition to the motion to dismiss, *see* Dkts. 37-4, 37-5, and three filed in response to a post-briefing order issued by this Court, *see* Dkts. 42 ("Dowd Aff."), 43 ("Polanco Aff."), 44 ("Guzman Aff."). These affidavits are neither integral to the complaint nor subject to judicial notice. *See Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006). Nevertheless, under New York law (which, as the Court will explain, governs the relevant aspect of the parties' dispute), "plaintiffs commencing actions against unidentified defendants are typically required to 'present an affidavit stating that a diligent inquiry has been made to determine the names of such parties.'" *Williams v. United States*, No. 07 Civ. 3018 (RJS)(THK), 2010 WL 963474, at *12 n.10 (S.D.N.Y. Feb. 25, 2010) (quoting *Luckern v. Lyonsdale Energy Ltd. P'ship*, 654 N.Y.S.2d 543, 546 (4th Dep't 1997)), *adopted by* 2010 WL 963465 (S.D.N.Y. Mar. 16, 2010). Accordingly, courts in this District have considered such affidavits in resolving motions to dismiss similar to this one. *See, e.g., Medina v. Seiling*, 14-cv-6034 (VSB), 2018 WL 1603857, at *7 (S.D.N.Y. Mar. 29, 2018); *Vasconcellos v. City of New York*, 12-cv-8445 (CM), 2014 WL 4961441, at *9 (S.D.N.Y. Oct. 2, 2014); *Laureano v. Goord*, No. 06 Civ. 7845(SHS)(RLE), 2007 WL 2826649, at *6 (S.D.N.Y. Aug. 31, 2007), *adopted by* 2007 WL 2852770 (S.D.N.Y. Sept. 28, 2007). Defendants have not objected to the Court's consideration of these affidavits—on the contrary, they have treated them as fact. *See* Dkt. 39 at 5–6. Thus the Court has assumed the factual content of plaintiffs' affidavits to be true, without making any findings as to their veracity. *See, e.g., Medina*, 2018 WL 1603857, at *1 n.1. Should evidence later emerge calling into doubt the factual representations in the affidavits, defendants will be at liberty to revisit these issues at summary judgment.

ushered plaintiffs into the living room, where they were forced to remain at gunpoint while the officers searched the apartment. *Id.* ¶¶ 16, 19, 31.

The officers did not have a warrant. *Id.* ¶¶ 14, 19. Nor did they identify themselves. *Id.* ¶ 18. Plaintiffs observed, however, that the officers had "41st Precinct" pins on their collars. *Id.*

With the search underway, an unnamed officer informed plaintiffs that the officers were searching for an individual they had observed entering the apartment through the fire escape window. *Id.* ¶¶ 19–20. At the time of the search, the window and its security gate were open. *Id.* ¶ 17. Plaintiffs allege, however, that the window and security gate had been locked from the inside when they went to bed the previous evening, and that they showed no sign of damage in the morning. *Id.* ¶¶ 17, 20. Plaintiffs infer that the officers must have opened the window and security gate from the inside before plaintiffs were ordered from their rooms. *Id.* ¶ 21.

The officers searched each room of the apartment, including dresser drawers and containers too small to hide an individual. *Id.* ¶ 19. After apparently finding nothing of interest, the officers left the apartment. *Id.* ¶ 22.

Later that morning, plaintiffs travelled to the 41st Precinct to report the warrantless search and file a complaint against the officers. *Id.* ¶ 24. Plaintiffs described the incident and the officers' appearances to the desk lieutenant, who told them that the officers were not from that precinct. *Id.*

"Shortly thereafter," and in any event no later than April 16, 2015, plaintiffs obtained security video from their building's superintendent showing the defendant officers entering the building and ascending the staircase. *Id.* ¶ 25; *see also* Guzman Aff. ¶¶ 6–7. On April 16, 2015, plaintiffs hired a private investigator, James Dowd, to assist in ascertaining the identity of the officers in the video. TAC ¶ 26; Guzman Aff. ¶ 7; Dowd Aff. ¶ 3. Dowd travelled to the 41st

Precinct and showed the desk lieutenant the security video. Dowd Aff. ¶ 6. The desk lieutenant stated that he was unable to identify to the officers. *Id.* ¶ 7. Dowd apparently took no further investigative steps.

On August 25, 2017, plaintiffs' counsel sought the assistance of Adyhl Polanco, a former NYPD officer, in identifying the officers in the video. Guzman Aff. ¶ 9; Polanco Aff. ¶ 3. Upon reviewing the security video, Polanco identified two of the officers, defendants Ulich and Lee Shue. TAC ¶ 26; Polanco Aff. ¶ 4; Dkt. 37-5 ¶ 5.[2]

### B. Procedural History

On August 15, 2017, plaintiffs filed a complaint against the City, the NYPD, and John Doe police officers 1 through 4. Dkt. 1. The complaint alleged that certain unidentified police officers unlawfully searched plaintiffs' apartment and seized their persons in violation of the Fourth, Fifth, and Ninth Amendments to the United States Constitution, and that the City was vicariously responsible for these constitutional violations by failing to train, supervise, and discipline its police officers.

On December 6, 2017, plaintiffs filed their first amended complaint (the "FAC"), adding police officers Ulich and "Le Shue" as defendants and dropping the New York City Police Department. Dkt. 18.

On December 22, 2017, the City filed a motion to dismiss. Dkt. 25. Later that day, the Court issued an amend-or-oppose order, directing plaintiffs to file, by January 12, 2018, either an amended complaint or a brief in opposition to the motion to dismiss. Dkt. 28.

---

[2] The City represents that Ulich and Lee Shue served in the 41st Precinct on August 17, 2014. *See* Dkt. 41 at 2.

4

On January 12, 2018, plaintiffs filed a second amended complaint providing additional factual background and withdrawing plaintiffs' Fifth and Ninth Amendment claims. *See* Dkt. 31.

On January 19, 2018, the City renewed its motion to dismiss. Dkt. 32. In its memorandum of law in support, the City argued that the second amended complaint failed to state a claim and that plaintiffs' claims against the newly named defendants were time-barred. *See* Dkt. 34 ("Def. Br.").

On February 7, 2018, plaintiffs filed a memorandum of law in opposition. Dkt. 37 ("Pl. Br."). In support, plaintiffs also filed a declaration attaching, *inter alia*, affidavits from a private investigator, Dowd, and a former police officer, Polanco, describing plaintiffs' efforts to identify the individual defendants. Dkt. 38.

On February 14, 2018, the City filed a reply memorandum in further support of the motion to dismiss. Dkt. 39.

On March 27, 2018, in response to the parties' briefing, the Court directed the City to file a letter informing the Court whether it represented Ulich and "Le Shue." Dkt. 40. In the same order, the Court directed plaintiffs to file additional affidavits describing in greater detail their efforts to identify the individual defendants. *Id.*

On March 29, 2018, the City filed a letter notifying the Court that, notwithstanding plaintiffs' proof of service, *see* Dkts. 29–30, Ulich and "Le Shue" had not been properly served. *See* Dkt. 41. Further, the City noted, "Le Shue" likely referred to Detective Dwayne Lee Shue. *See id.* at 2.

On April 5, 2018, plaintiffs filed three affidavits in response to the Court's order. *See* Dkts. 42–44.

On April 18, 2018, plaintiffs filed a motion to amend the complaint solely to correct the individual defendants' names. Dkt. 49. On April 30, 2018, the City filed an opposition, requesting in the alternative that if the Court were to grant the motion, that the Court apply the City's pending motion to dismiss the second amended complaint to the third amended complaint. *See* Dkt. 52.

On May 11, 2018, the Court granted plaintiffs leave to file the third amended complaint. Dkt. 53. The Court notified the parties that if the individual defendants consented to the City's representation, the Court would deem defendants' motion to dismiss fully submitted as to the substantively identical third amended complaint. *See id.* at 2.

On May 14, 2018, plaintiffs filed the third amended complaint, which is now operative. Dkt. 54 (the "TAC"). The TAC alleges (1) unlawful search and seizure in violation of the Fourth Amendment; (2) the City's failure to train, supervise, and discipline its police officers; and (3) deprivation of liberty without due process in violation of the Fourteenth Amendment. *See id.* ¶¶ 30–51.

On June 8, 2018, plaintiffs effected service on the individual defendants, Dkts. 63–64, and on June 22, 2018, the City notified the Court that the individual defendants had consented to the City's representation, Dkt. 65. Accordingly, as prefigured in the Court's May 11, 2018 order, the Court now construes the City's motion at Dkt. 32 as challenging the TAC on behalf of all defendants.

## II. Applicable Legal Standards

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In considering a motion to dismiss, a district court must "accept[] all factual claims in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 403 (2d Cir. 2014) (quotation marks omitted). However, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "[R]ather, the complaint's [f]actual allegations must be enough to raise a right to relief above the speculative level, *i.e.*, enough to make the claim plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quotation marks omitted). A complaint is properly dismissed where, as a matter of law, "the allegations in [the] complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.

Here, plaintiffs seek relief exclusively under 42 U.S.C. § 1983. Section 1983 provides redress for the deprivation of constitutional rights by persons acting under color of state law. To prevail on a § 1983 claim, a plaintiff must establish (1) the violation of a right, privilege, or immunity secured by the Constitution or laws of the United States (2) by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

**III.   Discussion**

Defendants seek dismissal of the TAC on four grounds: (1) The claims against individual defendants Ulich and Lee Shue are time-barred; (2) plaintiffs fail to state a claim of unlawful search or seizure; (3) plaintiffs fail to state a claim of deprivation of liberty without due process;

and (4) plaintiffs fail to state a municipal liability claim against the City. The Court will address each argument in turn.

### A. Timeliness of Claims against Ulich and Lee Shue

Defendants move to dismiss as time-barred all claims against the individual defendants, Ulich and Lee Shue. *See* Def. Br. at 15. For the following reasons, the Court holds that plaintiffs' claims are timely.

The statute of limitations for a § 1983 claim is the statute of limitations for a personal injury action under state law in the locality of the federal court deciding the case. *See Owens v. Okure*, 488 U.S. 235, 249–50 (1989); *see also* 42 U.S.C. § 1988. New York law provides a three-year statute of limitations for personal injury actions. N.Y. C.P.L.R. § 214(5).

Here, the incident giving rise to plaintiffs' claims occurred on August 17, 2014. Accordingly, the three-year statute of limitations for plaintiffs' claims expired on August 17, 2017—two days after plaintiffs filed the original complaint. Because the individual defendants were first named in the FAC, filed on December 4, 2017, plaintiffs' claims against the individual defendants are untimely unless the FAC related back to the original, timely complaint, pursuant to Rule 15(c) of the Federal Rules of Civil Procedure.

Rule 15(c) provides three means by which an otherwise untimely amended complaint can relate back to the original pleadings, so as to make claims against newly added defendants timely. Here, plaintiffs argue only that the FAC relates back under Rule 15(c)(1)(A). Accordingly, the Court limits its analysis to that standard.

Rule 15(c)(1)(A) states that "an amendment to a pleading relates back to the date of the original pleading when the law that provides the applicable statute of limitations allows relation

back." F.R.C.P. 15(c)(1)(A). Because New York law dictates the statute of limitations in this action, New York law provides the applicable law under Rule 15(c)(1)(A).

A specific provision of New York's Civil Practice Law and Rules provides the framework under which claims may be brought against John Doe defendants and later amended once the identity of the defendant becomes known. This provision—New York C.P.L.R. § 1024—states:

> A party who is ignorant, in whole or in part, of the name or identity of a person who may properly be made a party, may proceed against such person as an unknown party by designating so much of his name and identity as is known. If the name or remainder of the name becomes known all subsequent proceedings shall be taken under the true name and all prior proceedings shall be deemed amended accordingly.

In order for amended pleadings to relate back under C.P.L.R. § 1024, a plaintiff must meet two requirements: (1) The plaintiff must exercise "due diligence, prior to the running of the statute of limitations, to identify the defendant by name"; and (2) the original pleadings must describe the John Doe party in sufficient detail to "fairly apprise" that party that he or she is the intended defendant. *Hogan v. Fischer*, 738 F.3d 509, 519 (2d Cir. 2013) (quotation marks omitted). The plaintiff bears the burden of making a good-faith effort to identify the defendants. *Barrett v. City of New York*, 720 F. App'x 29, 33 (2d Cir. 2017). The Court will address each of these requirements in turn.

### 1. Plaintiffs Exercised Due Diligence

To demonstrate due diligence under C.P.L.R. § 1024, a plaintiff must "show that he or she made timely efforts to identify the correct party before the statute of limitations expired." *Ceara v. Deacon*, 68 F. Supp. 3d 402, 409 (S.D.N.Y. 2014) (quoting *Strada v. City of New York*, 11-cv-5735 (MKB), 2014 WL 3490306, at *5 (E.D.N.Y. July 11, 2014)). "[A] plaintiff

exercising due diligence will take concrete and timely steps to ascertain an officer defendants' [sic] identity." *Barrett*, 720 F. App'x at 33.

There is no clear rule as to what specific actions a plaintiff must take to satisfy the due diligence requirement. To be sure, "[s]ection 1024's 'due diligence' requirement is not forgiving." *Id.* But courts in this District typically find a lack of due diligence only where the plaintiff failed to take "any action beyond filing his original complaint" prior to the expiration of the statute of limitations. *Berman v. Perez*, 17-cv-2757 (JGK), 2018 WL 565269, at *3 (S.D.N.Y. Jan. 24, 2018); *see, e.g.*, *Vasconcellos*, 2014 WL 4961441, at *9 ("Vasconcellos did nothing to exercise due diligence prior to the running of the statute—or for that matter, after it ran."); *JCG v. Ercole*, 11-cv-6844 (CM) (JLC), 2014 WL 1630815, at *14 (S.D.N.Y. Apr. 24, 2014) ("Plaintiff appears to have expended no efforts at all to identify the Individual Defendants in the three years that followed [the incident alleged], waiting until the statute of limitations had nearly run to file his complaint." (quotation marks omitted)), *adopted by* 2014 WL 2769120. At the margins, a plaintiff who takes her first investigative steps only months before the statute of limitations has run presents a "close question on which reasonable fact-finders could disagree." *Barrett*, 720 F. App'x at 34. But in cases without such extreme post-incident delay, courts have found due diligence where plaintiffs, prior to filing their complaints, submitted discovery requests to the Attorney General's office, *Hogan*, 738 F.3d at 519; made multiple inquiries to the relevant government department, *Medina*, 2018 WL 1603857, at *7; or "contacted an official to provide information about [the] [d]efendant's full identity," *Ceara*, 68 F. Supp. 3d at 410.

The Court finds that plaintiffs exercised due diligence in identifying the individual defendants. First, they wasted no time: The very morning of the incident, plaintiffs travelled to the 41st Precinct to file a complaint against the officers and inquire about their identities. TAC

¶ 24. At the precinct, plaintiffs described the officers' appearance to the desk officer, but were informed that no such officers worked in the precinct. *Id.* Undeterred, plaintiffs "[s]hortly thereafter" obtained security video from their superintendent for the sole purpose of trying to identify the officers. *Id.* ¶ 25. This video ultimately allowed plaintiffs to identify the individual defendants here. *See* Polanco Aff. ¶ 4.

Second, plaintiffs retained professional assistance. On April 16, 2015—long before the statute of limitations had run—plaintiffs hired a private investigator to ascertain the officers' identities. *Id.* ¶ 26. The investigator brought the security footage to the 41st Precinct in hopes of identifying the officers, but was stymied when the desk lieutenant represented that he could not identify the officers. *Id.* ¶ 26.

These efforts occurred within a year of the alleged incident. To be sure, plaintiffs have not explained why they took no further steps prior to filing the original complaint some two years later, on the eve of the expiration of the statute of limitations. Nevertheless, plaintiffs' efforts to ascertain the officers' identities distinguish this case from the majority of cases finding a lack of due diligence in the absence of *any* efforts at identification prior to the expiration of the statute of limitations. Because plaintiffs here took immediate and concrete steps to identify the individual defendants, they have satisfied C.P.L.R. § 1024's due diligence requirement.[3]

### 2. Plaintiffs Adequately Described the John Doe Officers

In addition to due diligence, § 1024 requires that plaintiffs, in their initial complaint, describe the Doe defendants with sufficient particularity as to give notice to the unnamed parties

---

[3] On August 25, 2017, plaintiffs contacted retired police officer Adyhl Polanco to assist in identifying individuals in the surveillance video. *See* Polanco Aff. ¶ 3. Although these efforts bore fruit, they are irrelevant to the due diligence inquiry, because by then the statute of limitations had already run.

11

that they were intended defendants. *See Hogan*, 738 F.3d at 519. A complaint with insufficient description will be dismissed as "jurisdictionally defective" under C.P.L.R. § 1024. *Bumpus v. N.Y.C. Transit Auth.*, 883 N.Y.S.2d 99, 104 (2d Dep't. 2009).

This requirement is not particularly arduous. *See, e.g., Hogan*, 738 F.3d at 519 (plaintiffs adequately described Doe defendants where complaint provided the date, time, and location of the incident, as well as a physical description of the unidentified defendants); *Jordan v. City of New York*, 15-cv-6364 (TPG), 2016 WL 1383534, at *3 (S.D.N.Y. 2016) ("likely" adequate description where the complaint listed the date and location of the arrest); *Duncan v. City of New York*, No. 11-CV-3901 (ENV)(JO), 2014 WL 3530858, at *3 (E.D.N.Y. July 15, 2014) (adequate description where complaint listed date and location of the arrest and detailed the actions of the later-identified officer); *Maurro v. Lederman*, 795 N.Y.S.2d 867, 868 (Sup. Ct. 2005) (adequate description where complaint described defendant as doctor who treated plaintiff at a specific office on a given day).

Here, plaintiffs' original complaint included enough detail to put Ulich and Lee Shue on notice that they were the intended defendants. Plaintiffs clearly alleged the date, time, and location of the incident. *See* Dkt. 1 ¶ 14. They alleged that the officers wore NYPD uniforms with 41st Precinct pins. *See id.* ¶ 18. And they alleged the specific conduct of the officers, including that at least one of the officers spoke Spanish. *Id.* ¶¶ 14, 19–20. Officers in the 41st Precinct—and particularly those working the overnight tour—reasonably could have read the complaint and known whether they were among the Doe officers.[4]

---

[4] Defendants fault plaintiffs primarily for failing to describe the officers' physical features. Def. Br. at 7–8. But defendants cite no authority for the proposition that C.P.L.R. § 1024 requires such a description. To be sure, the Second Circuit has held that physical descriptions may contribute to the sufficiency of the pleadings, *see Hogan*, 738 F.3d at 519, but courts generally have not read a physical-description requirement into § 1024, *see, e.g., Jordan*, 2016 WL

Because the Court finds that the original complaint contained enough detail to fairly apprise Ulich and Lee Shue that they were the intended defendants in this action, and because plaintiffs exercised due diligence in attempting to ascertain the identities of those officers, the FAC and its successors relate back to the original pleadings under New York C.P.L.R. § 1024 and Rule 15(c)(1)(a). As a result, plaintiffs' claims against Ulich and Lee Shue are timely.

### B. Adequacy of Plaintiffs' Fourth Amendment Claims

On the merits, plaintiffs allege that the individual defendants violated their rights under the Fourth Amendment when they illegally entered plaintiffs' home, searched the apartment, and detained plaintiffs at gunpoint. *See* TAC ¶¶ 31–32. Defendants do not dispute that the officers acted without a warrant; instead, they argue that, on the face of the TAC, it is clear that the officers' conduct was justified by exigent circumstances. Def. Br. at 6–9.

"Absent exigent circumstances or some other exception, the police must obtain a warrant before they enter the home to conduct a search or otherwise intrude on an individual's legitimate expectation of privacy." *United States v. Gori*, 230 F.3d 44, 50 (2d Cir. 2000); *see also Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990). One exigent circumstance permitting warrantless entry into a residence is "hot pursuit" of a suspect. *See United States v. Santana*, 427 U.S. 38, 42–43 (1976). Where an entry is justified by an exigent circumstance like "hot pursuit," no cause of action for warrantless entry will lie under § 1983. *See Anthony v. City of New York*, 339 F.3d 129, 136–37 (2d Cir. 2003).

Defendants argue that the facts alleged in the TAC establish a "hot pursuit" exigency sufficient to support the alleged entry. They argue that because the officers "apparently entered

---

1383534, at *3; *Duncan*, 2014 WL 3530858, at *3; *Maurro*, 795 N.Y.S.2d at 868. *But see Arminio v. Holder*, No. 15 Civ. 5812 (NSR), 2016 WL 4154893, at *4 (S.D.N.Y. Aug. 1, 2016).

the[] apartment after viewing someone climbing through an open window," and because plaintiffs themselves acknowledge that the window was open, the officers' entry (and any ensuing search and seizure) was justified by reasonable concern for the safety of those in the apartment. Def. Br. at 7–9.

That argument is meritless. First, the TAC nowhere concedes that defendants actually entered the apartment in pursuit of an intruder. Rather, the TAC alleges only that the officers *stated* as much. TAC ¶ 20. The officers' claim cannot be assumed true. And, far from crediting the officers' explanation, the TAC alleges that plaintiffs "knew, and informed the officers," that the officers' stated theory that an intruder had entered the apartment "was impossible." *Id.*

Second, as concerns the open window, the TAC acknowledges only that the window and accompanying security gate were open when plaintiffs were ushered into the living room. *Id.* ¶ 17. Rather than accept defendants' argument that the window must have been opened by an intruder, the TAC alleges (and the Court for present purposes must accept) that the window and security gate had been closed and locked from the inside when plaintiffs went to sleep the previous evening, and that neither the window nor the gate showed any sign of damage in the morning. *Id.* ¶¶ 17, 21. Along these lines the TAC repeatedly alleges that "defendant officers opened the gate and window in a post hoc attempt to furnish otherwise non-existent probable cause." *Id.*

To be sure, discovery may yield evidence supporting defendants' view of the facts, such that their entry was justified as a matter of law. But for present purposes, on this motion to dismiss, the Court must accept as true the TAC's factual allegations tending to show that officers merely *claimed* an exigency, when in fact there was none.

The same is true of plaintiffs' allegations concerning defendants' conduct inside the apartment. True, if the officers' warrantless entry were justified by hot pursuit, a limited sweep and temporary detention might have been reasonable. *See Tierney v. Davidson*, 133 F.3d 189, 197–98 (2d Cir. 1998) (once officers are lawfully inside the home, the reasonableness of their conduct "must be assessed upon a case-by-case basis, taking into account the type of emergency which appeared to be present" (quoting 3 Wayne LaFave, *Search and Seizure* § 6.6(a), at 400–01 (3d ed. 1996))); *see also Muehler v. Mena*, 544 U.S. 93, 98 (2005) (detention incident to search); *Maryland v. Buie*, 494 U.S. 325, 337 (1990) (protective sweep).

But because the legality of the officers' entry is disputed and indeed appears the primary focus of this litigation, it would put the cart before the horse to conclude at this early stage that any ensuing search and/or detention was lawful. For present purposes, it is sufficient that the TAC adequately alleges that the officers entered the apartment on the *pretext* of chasing down an intruder. If the evidence ultimately shows that exigent circumstances justified the officers' entry, plaintiffs' claims concerning the subsequent search and seizure may fail.[5] For now, however, plaintiffs' well-pled theory of an unlawful search and seizure arising out of an unjustified warrantless entry easily survives defendants' motion to dismiss.

C.    **Adequacy of Plaintiffs' Due Process Claims**

Plaintiffs also allege that defendants violated their Fourteenth Amendment right to due process by detaining them at gunpoint. *See* TAC ¶ 50. Defendants move to dismiss this claim on the ground that unlawful seizure claims are properly brought under the Fourth Amendment only. *See* Def. Br. at 9–10. Plaintiffs have not responded substantively to this argument.

---

[5] Or they may not. *See* Pl. Br. at 10–11 (arguing defendants' search of the apartment "extended beyond the permissible scope of any protective sweep").

15

Plaintiffs' due process claims sound entirely in the Fourth Amendment's prohibition on unreasonable seizures. *See* TAC ¶¶ 31–33, 50. The law is clear that such claims arise under the Fourth Amendment rather than the Due Process Clause of the Fourteenth Amendment. *See Russo v. City of Bridgeport*, 479 F.3d 196, 209 (2d Cir. 2007) ("[Where] the Fourth Amendment provides a more 'explicit textual source of constitutional protection,' . . . the Fourth Amendment, rather than substantive due process, should serve as 'the guide for analyzing these claims.'" (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989))); *Ambrose v. City of New York*, 623 F. Supp. 2d 454, 474 n.9 (S.D.N.Y. 2009) ("Plaintiff's allegations of false arrest and malicious prosecution state a claim *only* under the Fourth Amendment, and not under the Due Process Clause of the Fourteenth Amendment."). The Court therefore dismisses plaintiffs' claims alleging a violation of the Due Process Clause.

**D.      Municipal Liability Claims**

Finally, plaintiffs allege that the City maintained a practice or policy of failing to properly train, supervise, and discipline its police officers regarding investigative practices and unlawful searches, and that this practice or policy caused plaintiffs' constitutional injuries. TAC ¶ 36. The City moves to dismiss these claims on the ground that plaintiffs have failed to adequately plead an official policy or custom that caused the alleged violations. Def. Br. at 11–14.

Municipalities are considered persons, and therefore can be held liable, under § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). However, municipal liability cannot be based solely on a theory of *respondeat superior*. *Id.* at 691. Rather, to hold a municipality liable under § 1983 for the unconstitutional actions of its employees, plaintiffs must prove an official policy or custom that directly caused the deprivation of their constitutional rights. *Wray*

16

*v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007). This burden does not require plaintiffs to establish the existence of a formal, officially endorsed policy; rather, plaintiffs may establish *Monell* liability by showing either (1) a "practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware" or (2) "a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees." *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010).

The TAC lacks any concrete allegations that the alleged constitutional violations here occurred pursuant to a city policy or practice. Indeed, there are no particularized allegations of any unconstitutional acts other than those occurring on August 17, 2014. *See Mitchell v. City of New York*, 841 F.3d 72, 80 (2d Cir. 2016) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy that can be attributed to a municipal policymaker." (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985) (alterations omitted)).

Instead, plaintiffs rely entirely on a March 2016 Civilian Complaint Review Board report (the "CCRB Report") that studied civilian complaints of improper NYPD entries and searches. TAC ¶¶ 39–44. Plaintiffs argue that this report establishes that "the City of New York had actual or constructive notice of a common widespread pattern or practice by the police of conducting unlawful warrantless entries and unlawful searches into homes," and that "the cause of the unlawful and warrantless home searches [was] the failure to adequately train police officers on the law and procedures that must be followed in a warrantless home entry." *Id.* ¶¶ 41, 43. Thus

plaintiffs argue that (1) the CCRB Report should have put the City on notice of a constitutional problem for which corrective action was necessary, and (2) the failure to take any corrective action caused plaintiffs' constitutional injuries and shows deliberate indifference. *See id.* ¶ 47.

These arguments suffer from a fatal infirmity. The events at issue in this case occurred on August 17, 2014. *Id.* ¶ 14. The CCRB Report was not published until 2015.[6] The publication of the CCRB Report therefore could not have put the City on notice that it needed to take corrective action before the incident at plaintiffs' apartment. *See Connick v. Thompson*, 563 U.S. 51, 61 (2011) (to find a municipality liable on a deliberate indifference theory, it must have been "on actual or constructive notice that a particular omission in [its] training program cause[d] city employees to violate citizens' constitutional rights," and, after receiving notice, municipal officials must have neglected to remedy that omission).

In any event, plaintiffs' *Monell* claims fail for an independent reason: A conclusory recitation of the CCRB Report's findings is insufficient to adequately plead *Monell* liability. Even assuming that the CCRB Report provided a basis to infer that many similar warrantless entries had occurred, "[t]he fact that NYPD officers have conducted illegal entries, searches, and arrests on numerous occasions, however unfortunate, standing alone, does not support an inference of an unofficial policy or practice at the NYPD." *Joseph v. Doe*, 16-cv-2004 (PKC) (LB), 2017 WL 4233024, at *5 (E.D.N.Y. Sept. 22, 2017) (dismissing *Monell* claim premised in part on the same CCRB Report). And to the extent that plaintiffs seek to rely on an alleged failure to train, *see* TAC ¶ 43, the TAC offers no concrete allegations as to how adequate training keyed to the CCRB's findings would have prevented the warrantless entry alleged here. *See*

---

[6] *See* Civilian Complaint Review Board, *Crossing the Threshold: An Evaluation of Civilian Complaints of Improper Entries and Searches by the NYPD from January 2010 to October 2015* (2015), http://www.nyc.gov/html/ccrb/downloads/pdf/Crossing-the-Threshold-2010-2015.pdf.

*Joseph*, 2017 WL 4233024, at *9; *see also City of Canton, Ohio v. Harris*, 489 U.S. 378, 391 (1989) ("[Plaintiff] must still prove that the deficiency in training actually caused the police officers' indifference . . . ."). Because the TAC cannot support a claim that the City maintained a policy, practice, or custom of tolerating warrantless entries and searches, or that such a policy caused the constitutional violations alleged here, it fails to state a plausible claim for relief.

Accordingly, the Court dismisses all claims against the City.

## CONCLUSION

For the foregoing reasons, the Court dismisses plaintiffs' due process claims and claims against the City. However, the Court denies defendants' motion to dismiss plaintiffs' Fourth Amendment claims against defendants Ulich and Lee Shue.

In light of this decision, plaintiffs are directed, within one week of the date of this order, to file a fourth amended complaint amending the caption to include only defendants Ulich and Lee Shue. For avoidance of doubt, the Court does not expect to grant plaintiffs further leave to amend absent extraordinary circumstances.

The parties are also directed, within one week of the date of this order, to submit a joint case-management plan, consistent with this Court's Individual Rules, that contemplates the close of fact discovery within four months.

The Clerk of Court is respectfully directed to close the motion pending at Dkt. 32.

SO ORDERED.

                                             *Paul A. Engelmayer*
                                             Paul A. Engelmayer
                                             United States District Judge

Dated: July 5, 2018
        New York, New York